UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:14-cr-96-SEB-TAB-8 |
| ) | |
| DAVID BELL, ) | |
| ) | |
| Defendant. ) | |

**ENTRY GRANTING MOTION FOR COMPASSIONATE RELEASE**

Defendant David Bell requests compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A), dkt. 1303, and has filed a supplemental motion for compassionate release, dkt. 1309. For the reasons explained below, his motions are **GRANTED**.

### I.     Background

In 2016, a jury convicted Mr. Bell of one count of conspiracy to distribute 500 grams or more of methamphetamine mixture and one count of unlawful use of communication facility. Dkt. 920. As summarized by the Seventh Circuit, Mr. Bell was "involved in a vast methamphetamine-distribution conspiracy in and around North Vernon, Indiana from October 2013 through May 2014." *United States v. Maggard*, 865 F.3d 960, 964 (7th Cir. 2017). Mr. Bell faced a mandatory life sentence, dkt. 904 at 13, and the Court imposed such sentence. dkt. 920 at 2.

In 2021, Mr. Bell filed his first motion for compassionate release. Dkt. 1230; 1252. In his first motion, Mr. Bell argued that he had established extraordinary and compelling reasons for compassionate release because he suffers from medical conditions from which he is unlikely to recover which affect his ability to provide self-care in prison, and because those conditions also

increase the likelihood that he will become severely ill if he were to contract COVID-19. Mr. Bell further argued that, due to changes to certain mandatory minimums and qualifying predicate offenses, if he were sentenced today, he would likely receive a shorter sentence. The Court assumed without deciding that he established an extraordinary and compelling reason for release because he is unable to provide self-care while in prison. Dkt. 1288 at 4. The Court denied the motion, however, because the § 3553(a) sentencing factors weighed against his release. *Id.* Mr. Bell appealed the decision, and the Seventh Circuit dismissed the appeal. *United States v. Bell*, 2023 WL 2710291, at *1 (7th Cir. Feb. 7, 2023). Mr. Bell later filed a motion for reconsideration, dkt. 1295, which the Court denied finding that the § 3553(a) still weighed against release and that Mr. Bell had not put forward any arguments which would alter the Court's analysis, dkt. 1297.

Mr. Bell has filed his second motion for compassionate release pro se, dkt. 1303, and later filed a supplemental motion, dkt. 1309. In his motions, Mr. Bell contends that extraordinary and compelling reasons for release exist in his case because (1) he suffers from a terminal condition and is unable to provide self-care while in Bureau of Prisons ("BOP"), dkt. 1303 at 6, and (2) a change in the law has produced a disparity between the sentence he received and the sentence he would receive today. Dkt. 1304 at 21. The Government filed a response in opposition to the motion, dkt. 1311, and the Defendant filed a reply, dkt. 1314. The motions are ripe for the Court's decision.

## II.   Discussion

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet, under one exception to this rule, a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The Seventh Circuit has held that a district court has broad

2

discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately, "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

Mr. Bell argues that his end-stage organ failure and pulmonary fibrosis together render his condition terminal which demonstrates an extraordinary and compelling reason for his release. Dkt. 1304 at 4. He also argues that his release would not pose a danger to the community because he undergoes dialysis three times a week for four hours, each time leaving him physically ill and tired and therefore unable to commit further criminal acts. Dkt. 1304 at 5. He contends that the § 3553(a) sentencing factors favor his release. *Id.* at 11–13. The Government opposes the motion because its claims he has not met his burden to show that he has a terminal illness, he has failed to establish he is no longer a danger to the community, and the sentencing factors weigh against his release. Dkt. 1311.

A. *Extraordinary and Compelling Reasons*

The United States Sentencing Commission recently amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting a sentence reduction. *See* https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 (last visited February 15, 2024). One such new circumstance relates to the medical circumstances of the defendant and permits the court to find that extraordinary and compelling reasons for release exist where:

> The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*,

> a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

U.S.S.G. § 1B1.13(b)(1)(A).

Mr. Bell contends that he suffers from end-stage organ disease which is terminal particularly in combination with pulmonary fibrosis and other conditions including hypertension, diabetes, and heart failure. Dkt. 1304 at 4–8. His medical records show that, in April 2023, a physician estimated that the likelihood of survival for the next two years, based on his comorbidities including his dialysis treatment, to be 46 to 58%. Dkt. 1304-1 at 12.

The Government contends that Mr. Bell has merely reiterated arguments made in his first motion for compassionate release. Dkt. 1311 at 3. It claims that he has provided no evidence that he suffers from a terminal condition. *Id.* at 3–4. In fact, the Government claims he does not suffer from a terminal illness as reflected in the Warden's denial of compassionate release. *Id.* at 3–4. The Warden's denial states that "[a] review of [Mr. Bell's] medical record indicates that although [he] ha[s] a condition with an end-of-life trajectory, [he] do[es] not have end-of-life indicators that would establish a prognosis of terminal." Dkt. 1304-1 at 3.

We find it difficult to square the Government's arguments with the record before us. Admittedly, Mr. Bell's arguments in the instant motion are similar to those in his prior motion, but he advances an entirely new argument here. In addition to claiming that he cannot provide self-care in prison, he now also claims that his physical/medical condition is terminal. This contention is supported by substantial new evidence, specifically, his physician's dire prognosis. In opposing this assertion, rather than relying on medical records, the Government cites to the Warden's determination that no "prognosis of terminal" has been made. Of course, the Court is not bound by

4

the Warden's determination.[1] *Gunn*, 980 F.3d at 1180. More persuasive is the fact that the Warden did conclude that Mr. Bell's condition reveals an "end-of-life trajectory," which finding mirrors the guidelines defining terminal illness. Even so, the Warden denied Mr. Bell's request on the grounds that he did not have "end-of-life indicators that would establish a prognosis of terminal." The distinction between an "end-of-life trajectory" and "end-of-life indicators that would establish a prognosis of terminal" is at best ambiguous and confusing. To the extent the distinction is based on an estimated duration of the end-of-life timeline, such a distinction is irrelevant, given the plain language of the guidelines which expressly does not require a specific life expectancy prognosis. U.S.S.G. § 1B1.13(b)(1)(A). Mr. Bell's medical records clearly establish that he is in the advanced stages of a serious illness: his end-of-life trajectory includes end-stage organ failure which pegs his likely chance of survival over two years at approximately 50%. We deem this to be a terminal illness as referred to in and defined by the United States Sentencing Guidelines § 1B1.13(b)(1)(A). Thus, Mr. Bell has successfully presented an extraordinary and compelling reason for his release.[2]

   B. *Danger to any Other Person or the Community*

Mr. Bell asserts that his release would pose no danger to the community or any other person because his medical condition and treatment have left him physically unable to commit further crimes. Dkt. 1304 at 12–13. The Government is not so easily convinced that Mr. Bell is no longer a danger to the community, given the serious circumstances leading to his conviction as well as

---

[1] In *United States v. Gunn*, the Seventh Circuit stated that it is "expected that district judges will give the Director [of the BOP]'s analysis substantial weight, even though under the First Step Act the Director's views are not controlling." 980 F.3d 1178, 1180–81 (7th Cir. 2020). In this case, the Court has considered the views of the Warden who oversees Mr. Bell's facility but rejects them for the reasons stated.

[2] With regard to Mr. Bell's additional arguments that he is unable to provide self-care while incarcerated and that a change in the law has created a disparity between the sentence he received and the sentence he would receive today, we make no determination, beyond simply having considered them to the extent they are relevant to our 18 U.S.C. § 3142(g) and 18 U.S.C. § 3553 analyses.

his criminal history and his pattern of noncompliance with his conditions of probation. Dkt. 1311 at 5.

The Sentencing Guidelines specify that compassionate release is appropriate *only* where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Section 3142(g), which sets out the factors the court must consider in determining whether a defendant should be detained pending trial, guides the court's release determination under post-incarceration circumstances as well. There are factors very familiar to federal district court judges.

> **(g) Factors to be considered**.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>> **(2)** the weight of the evidence against the person;
>> **(3)** the history and characteristics of the person, including—
>>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>>
>> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mr. Bell's crimes were without a doubt very serious. He was a participant in a large-scale conspiracy to distribute methamphetamine in the North Vernon, Indiana, area and was personally responsible for the distribution of large quantities of methamphetamine. Dkt. 904 at 5–6. Mr. Bell

has maintained a relatively clear disciplinary history while incarcerated, with only a single, albeit serious, disciplinary infraction occurring nearly five years ago. Dkt. 1252-5 at 1. His criminal history includes multiple drug convictions, including a felony for dealing in a controlled substance, dkt. 904 at 8–9, but his most recent criminal conduct resulting in the conviction and current incarceration occurred nearly a decade ago, *id.* at 5–6. Mr. Bell's current medical condition which requires ongoing dialysis treatment suggests that Mr. Bell will be physically incapable of resuming criminal behavior, especially drug related conduct. We hold that Mr. Bell's release from incarceration followed by ten years of supervised release will not pose a significant threat to the safety of any person or the public. Thus, pursuant to § 3142(g), the Court finds that Mr. Bell's custodial sentence should be reduced to time served. The ten-year period of supervised release shall be served as originally imposed, subject to the terms and conditions pronounced at that time.

C. *Section 3553(a) Factors*

Mr. Bell asserts that the § 3553(a) factors weigh in favor of his release. Dkt. 1304 at 13–21. The Government contends that the § 3553(a) factors weigh against release. Again, it is a familiar litany.

> Section 3553(a) provides:
>
> **(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> > **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> > **(2)** the need for the sentence imposed—
> > > **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > > **(B)** to afford adequate deterrence to criminal conduct;
> > > **(C)** to protect the public from further crimes of the defendant; and
> > > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

7

> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence[s] and the sentencing range established for—
>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
>
> **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In our prior order, the Court's analysis resulted in the conclusion that the § 3553(a) factors did not entitle Mr. Bell to release; we held:

> Weighing in Mr. Bell's favor, he has completed many BOP classes and programs, including substance abuse classes. Dkt. 1252 at 16. He has only one disciplinary infraction during his time in BOP custody and has been rated a low risk for recidivism. *Id.* at 16-17. Mr. Bell plans to reside with a longtime family friend and pastor if he is released. *Id.* at 17.
>
> Weighing heavily against him, however, Mr. Bell committed a serious crime. While he has had only one disciplinary infraction in prison, the infraction was for possessing a dangerous weapon. Dkt. 1252-5. As of at least June 2021, Mr. Bell was classified as high security by the BOP. Dkt. 1252-4. Mr. Bell has a substantial criminal history, including several felonies and multiple instances of his probation being revoked. Dkt. 826. Finally, even if the Court were to accept Mr. Bell's contention that he would be subject to a 15-year mandatory minimum if sentenced today, dkt. 1252 at 11, he has still only completed slightly more than half of that term. Thus, releasing him now would be a substantial reduction.

Dkt. 1288 at 5.

The only circumstance that has changed that warrants our current reconsideration is Mr. Ball's terminal diagnosis. It deserves to be noted that this is, indeed, a highly compelling factor. In light of this new circumstance, which tips the balance in favor of his release, we hold that the § 3553(a) factors justify a reduction of Mr. Bell's sentence to time served. Further incarceration is not required, nor is it just, to deter Mr. Bell from further criminal conduct, nor to ensure the safety

of the public from future crimes. The purposes of continued punishment can be achieved through his ten-year term of supervised release.

### III.   Conclusion

Pursuant to 18 U.S.C. § 3582(c), the Court therefore finds that extraordinary and compelling reasons warrant a reduction of Mr. Bell's sentence to time served, that Mr. Bell does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his release from his term of imprisonment is consistent with the Sentencing Commission's applicable policy statements. The Court **GRANTS** Mr. Bell's motions for compassionate release, dkts. [1309], [1303], and **ORDERS** that Mr. Bell's sentence be reduced to **time served**. Imposition of the term of supervised release of 10 years continues unchanged. The terms and conditions of supervised release stated in the Judgment imposed on April 6, 2016 Judgment also remain as previously imposed. *See* dkt. 920.

This Order is stayed only long enough for the BOP to make appropriate travel arrangements and to ensure Mr. Bell's safe release, and in no event more than 14 days from the date of this order. If more than 14 days are needed to make appropriate travel arrangements and to ensure Mr. Bell's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

No later than **12:00 p.m. on February 22, 2024,** counsel for the United States is **ordered** to do the following: (1) transmit the contemporaneously filed AO248 Order to Mr. Bell's custodian; and (2) file a notice with the Court confirming that transmission of the AO248 Order has occurred.

**IT IS SO ORDERED.**

Date:   2/20/2024

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

9

Distribution:

All Electronically Registered Counsel

David Bell
Register Number: 12333-028
FMC Devens
Federal Medical Center
P.O. Box 879
Ayer, MA 01432